Attached you will find an action plan agreed upon by a joint DOC/PBPP committee. The action items are intended to facilitate and expedite parole processing by simplifying procedures and by identifying those inmates who generally can be given favorable parole recommendations. Further policy and procedures relative to the action plan will be forthcoming, but until then the following steps should be initiated immediately:

1. **PAROLE CASES NOT SEEN**: You must ensure that we do everything we possibly can to make certain that inmates are reviewed for parole in the month they are scheduled. You should immediately review your most recent report on cases not seen and take corrective action on those where we are responsible for the delay. You must take steps to ensure that all required paperwork is in place for cases scheduled for review. You should continually monitor the number of cases removed from the docket and take immediate action so that these cases can be reviewed on the next docket. Procedures to simplify the 13-A and the psychologicals will be issued soon, but you must see that the material that is required now is available.

2. **TPV'S RECOMMIT AND REPAROLE:** Beginning on August 1, 2003, the PBPP will begin recommitting and reparoling some TPV's without the need for interview prior to release. These TPV's can generally only lose their reparole date if their adjustment is poor. The attached form is to be completed by unit management staff and forwarded to the parole office 45 days prior to the reparole date. This streamlines processing for these cases by eliminating the use of the 13-A and removing the need for interview by our staff and the Board.

3. **ASSESSMENT TOOLS, PAROLE RECOMMENDATIONS AND PROGRAMMING:**

   a. Assessment: The Department began a pilot test of five widely used risk and needs instruments in the fall of 2002. We are now evaluating the results from these assessment instruments and will make decisions about which tools to adopt in the next several months. The results of these assessments will help us to target programming more effectively and will give us a better sense of those inmates likely to succeed on parole. Until we have actuarial data on the risk and needs of our population, we will need to have other criteria in place to help us make recommendations about who should be paroled.

   b. Parole Recommendations: For now, we should recommend parole for those whose instant offense is not violent and whose criminal history is free of violence, as long as their adjustment is acceptable and they do not have serious program needs (e.g. those with low or moderate TCU scores migh be good candidates). We should also consider recommending those inmates whose violent actions are a thing of the past and who have no pressing programming needs now. We must remember that we are not to second-guess the courts by imposing a longer term of confinement on an inmate who can safely be handled with proper supervision on parole.

   c. Programming:

Instructions for Parole Processing
April 8, 2003

Page 2

      i. Inmates with a history free of violence should not be denied parole simply because they have not completed programming. For those inmates for whom some programming is desirable but not essential, unit staff can make specific aftercare recommendations (e.g, parole to outpatient AOD treatment).

     ii. For those drug and sexual offenders with greater needs who are approaching a satisfactory completion date (Phase 2 in SOP, Phase 3 in the TC's), we should recommend "parole upon completion of ...," which allows the PBPP to grant a conditional parole and avoids restaffing by us and reinterview by the PBPP. In this case, release is triggered by a memo from the DOC to the PBPP announcing completion of the program. In the near future, the PBPP will have special sex offender supervision and treatment available to which sex offenders can be recommended.

    iii. Violent offenders who have a positive adjustment should also be considered for parole, especially those who have completed or will complete programming, those who have no other history of violence, and those whose crimes of violence occurred in the past and have not been repeated. Offenders who would not be good candidates would be those whose crime is particularly offensive and/or bizarre or those who have recidivated with a new crime of violence. All violent offenders should be evaluated on a case-by case basis with a consideration of both aggravating and mitigating factors.

4. **HOME PLANS AND CCC REFERRALS:** Referrals to CCC's should only be made on inmates who have no home or require a step-down from the secure confines of the institution to community living. Some examples of those who might benefit from the center experience include: inmates with a long history of criminal activity, those who have been incarcerated for many years, those who have an unstable employment history and those with serious AOD or mental health issues. Please note that the presence of one of these factors should not necessarily dictate a recommendation to center. The presence of multiple risk factors, however, may be cause for recommendation to center. Parole to a home plan is acceptable and advisable in many cases. Inmates who are to be paroled via interstate compact to another state should not be recommended to a CCC unless there are extraordinary reasons. In the future, the risk and needs assessment instruments that we adopt will assist us in sorting out those who should go to centers from those who could be paroled directly to the street.

To facilitate home plan approval, the Unit Teams should give the inmate the attached "Release Planning Form," at the parole staffing. The inmate will then complete the form and send it to the Parole Office.

5. **COR AND CCC DATES:** Effective May 11, 2003 the institutions will be receiving CCC bed dates for parolees that are two weeks instead of five weeks in advance. COR should be initiated as soon as possible after receipt of the green sheet.

6. **EFFECT OF MISCONDUCTS:** There has never been a general rule on the effect of misconducts on parole, and although recent misconducts for Classes 1- 14 should dictate an institution vote against parole, all other misconducts should be evaluated in terms of the inmate's overall adjustment and the relative seriousness and frequency of misbehavior. Informal Resolutions are not in and of themselves to have an effect on parole; they are to be noted only as a part of work or housing reports.

Effect of misconducts on paroles already granted: When an inmate who already has been granted parole receives a Class 1 misconduct, the institution, through the Unit Management Team, will make a specific recommendation in writing to the Board regarding continuation of parole support. Informal resolutions will not have an effect on parole unless there is a serious pattern of declining adjustment; Class 2's should not effect parole unless there are a several of them; and

Instructions for Parole Processing
April 8, 2003

Page 3

    even Class 1's should be evaluated as to seriousness (eg, minor contraband and failure to stand count may not be a good reason to withdraw our support).

7. **EARLY PAROLE RECOMMENDATIONS:** DOC policy allows us to request an early parole review for inmates who have been denied parole and given a lengthy setback (six months or more). When an inmate completes one-half of the setback time and has fulfilled whatever adjustments or programs were required by the PBPP, he/she can be considered for an early review, which is done via vote sheet and letter to the PBPP instead of a full 13-A. This is a good management tool and is a way for you to bring to the attention of the Board inmates who you believe are ready for parole.

In your first institution Weekly Status Report of every month, you must indicate for the previous month:

1. The number of initial parole staffings held in your institution.
2. The number of inmates recommended on initial parole.
3. The number of reparole staffings held in your institution.
4. The number of inmates recommended for reparole.
5. The number of inmates removed from the docket for the given month.

    While these statistics will be used by Central Office, they are collected primarily to help you monitor the parole recommendations from your institution. You should carefully review the monthly report and the parole vote sheets, especially the negative votes. You should consider: Are inmates being denied by our staff because of poor institutional adjustment many years earlier or criminal history reasons that are no longer germane to release? Are there inmates whose health or age are such that they are no longer capable of a serious crime? Are we not recommending inmates because they have not completed programming but could do so in the community?

    Your respective Deputy Secretary will review each of these items with you. You are encouraged to share any ideas that you may have, in line with action items presented here, with your Deputy Secretary. I expect each one of you to give your personal attention to the implementation of these action items and to review them with appropriate staff.

JAB/JMM/KG

Enclosures